FILED

2021 Mar-10  PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **JANNIE KEITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 1:18-CV-01311-KOB** |
| | ) |
| **TALLADEGA CITY BOARD OF** | ) |
| **EDUCATION,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

When Jannie Keith initiated this employment discrimination case against the Talladega City Board of Education, she was a nearly thirty-year veteran teacher, coach, and athletic director for multiple schools in the Talladega City school system. For the purposes of this case, Ms. Keith's first twenty-four years in the Board's employ were uneventful. But in 2013, Ms. Keith began asking questions about her compensation—specifically, the supplemental compensation the Board paid her for coaching and for serving as Talladega High School's athletic director.

According to Ms. Keith, the Board paid her less for her coaching and administrative services than it did Charles Miller, another longtime Board employee who also coached, taught, and served a stint as athletic director. And after the Board terminated her as athletic director, Ms. Keith filed a charge of discrimination with the EEOC that grew into this action, alleging that the Board discriminated against her on the basis of sex. The Board also subsequently terminated Ms. Keith as Talladega High School's softball coach. She remains employed by the Board as a teacher.

Now, both Ms. Keith and the Board have filed motions for summary judgment on Ms. Keith's claims, which she brought under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act based on the Board's pay and termination decisions. Because Ms. Keith has not produced sufficient evidence to carry her burden of "persuading the trier of fact that the [Board] *intentionally discriminated* against" her, the court will **DENY** Ms. Keith's motion (doc. 29) and will **GRANT** the Board's motion (doc. 26). *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis added).

## I.    Factual and Procedural Background

Plaintiff Jannie Keith began working for defendant Talladega City Board of Education in 1989, but the Board's pay and termination decisions that she challenges in this lawsuit all occurred between the 2009–2010 and 2016–2017 school years.  In the 2009–2010 through the 2012–2013 school years, Ms. Keith worked as a teacher for the Board, coached various sports, and acted as Talladega High School's assistant athletic director. (Doc. 28-1 at 12–25). Ms. Keith—and all other coaches in the Talladega City school system—received supplemental pay for coaching or for serving as an athletic director or assistant athletic director. (Doc. 28-1 at 2).

Until the 2009–2010 school year, the Board calculated *coaching* supplements at least in part based on the coach's *teaching* contract. For some sports, such as football and basketball, the Board would pay the coach a certain amount per month as a coaching supplement but would also pay the coach an additional month or months of *teaching* pay. For those sports, the Board multiplied a set monthly coaching supplement amount by the employee's teaching contract length; the Board's standard teaching contract lasted for 9 months, but other employees, such as principals and assistant principals, received 12-month contracts. Then, the Board would pay the coach an additional month of teaching pay determined entirely on the coach's teaching contract.

2

For other sports, including softball and volleyball, the Board paid the coach a fixed annual supplement. (Doc. 28-1 at 1–2, 9–10; doc. 28-5 at 6). The court will refer to this supplement scheme as the "Old Schedule."

Starting in the 2009–2010 school year, the Board adopted a new supplement schedule for coaches, which the court will call the "New Schedule." Under the New Schedule, the Board set fixed annual supplement amounts by sport. The head boys' and girls' varsity basketball coaches, for example, both received $8,000 in supplemental pay per year under the New Schedule. The New Schedule operated independently of the coach's teaching contract, unlike the Old Schedule. But—and importantly for the purposes of this case—the Board, at the beginning of the 2009–2010 school year, allowed its veteran coaches to elect whether to remain on the Old Schedule or to switch to receiving the supplements provided for by the New Schedule. (Doc. 28-1 at 2–3, 36). Finally, the Board paid $3,255 per year to its athletic director and assistant athletic director under both the Old and New Schedules. (Doc. 28-1 at 9, 33).

Charles Miller worked as the athletic director at Talladega High School from the 2009–2010 school year through the 2012–2013 school year and signed an 11-month contract to perform those duties. Mr. Miller also coached boys' varsity basketball and golf at the same time as he served as athletic director. At the beginning of the 2013–2014 school year, Mr. Miller signed a 12-month contract to become Talladega High School's assistant principal. The Board required Mr. Miller to stop coaching golf and to vacate the athletic director position after he became assistant principal; Mr. Miller still coached boys' varsity basketball and elected to receive supplemental compensation for that position from the Old Schedule. Mr. Miller remained on the Old Schedule until the start of the 2016–2017 school year. (Doc. 28-1 at 3–4, 15; doc. 28-5 at 6).

Ms. Keith worked as assistant athletic director with Mr. Miller from the 2009–2010 school year through the 2012–2013 school year. Ms. Keith became athletic director on October 7, 2013; on February 17, 2014, she elected to receive her supplemental compensation from the New Schedule. On February 26, 2014, the Board paid her an additional $1,536.28 to transition to the New Schedule. The Board paid Ms. Keith $8,000 annually to coach girls' varsity basketball under the New Schedule. But after Mr. Miller became assistant principal in 2013, he received $9,166.70 in supplemental compensation under annually under the Old Schedule to coach boys' varsity basketball until the 2016–2017 school year; the Board then required all coaches to transition to the New Schedule, and reduced Mr. Miller's supplemental compensation for the same position to $8,000. (Doc. 28-1 at 4–6).

Neither party has provided the court with a complete explanation of exactly *how* the Board determined Ms. Keith's and Mr. Miller's supplemental compensation under the Old Schedule or the Old Schedule's complicated relationship with teaching pay. Accordingly, neither party has calculated for the court how much either Ms. Keith or Mr. Miller received in supplemental pay for any individual coaching position before Ms. Keith elected to receive her compensation from the New Schedule and before Mr. Miller became assistant principal. So, the parties have not provided the court with the exact amount of Ms. Keith's and Mr. Miller's annual supplemental pay for any individual sport between the 2009–2010 and 2013–2014 school years. But the court has organized the supplemental pay of Mr. Miller and Ms. Keith into the chart below based on all the evidence submitted by the parties:

| School Year | Jannie Keith | Charles Miller |
|---|---|---|
| **2009-2010** | **Supplemental Compensation (Total):** $13,392.10 (Old Schedule)<br><br>**Positions:** Assistant Athletic Director ($3,255) Varsity Girls' Basketball | **Supplemental Compensation (Total):** $16,088.90 (Old Schedule)<br><br>**Positions:** Athletic Director ($3,255) Varsity Boys' Basketball |

| | | |
|---|---|---|
| | Jr. Varsity Girls' Basketball<br>Jr. High Volleyball | Golf |
| **2010-2011** | **Supplemental Compensation (Total):**<br>$13,392.10 (Old Schedule)<br><br>**Positions:**<br>Assistant Athletic Director ($3,255)<br>Varsity Girls' Basketball<br>Jr. Varsity Girls' Basketball<br>Jr. High Volleyball | **Supplemental Compensation (Total):**<br>$16,088.90 (Old Schedule)<br><br>**Positions:**<br>Athletic Director ($3,255)<br>Varsity Boys' Basketball<br>Golf |
| **2011-2012** | **Supplemental Compensation (Total):**<br>$14,477.10 (Old Schedule)<br><br>**Positions:**<br>Assistant Athletic Director ($3,255)<br>Varsity Girls' Basketball<br>Jr. Varsity Girls' Basketball<br>Jr. High Volleyball<br>Jr. High Softball | **Supplemental Compensation (Total):**<br>$16,088.70 (Old Schedule)<br><br>**Positions:**<br>Athletic Director ($3,255)<br>Varsity Boys' Basketball<br>Golf |
| **2012-2013** | **Supplemental Compensation (Total):**<br>$13,449.30 (Old Schedule)<br><br>**Positions:**<br>Assistant Athletic Director ($3,255)<br>Varsity Girls' Basketball<br>Jr. Varsity Girls' Basketball<br>Jr. High Volleyball<br>Jr. High Softball | **Supplemental Compensation (Total):**<br>$16,088.70 (Old Schedule)<br><br>**Positions:**<br>Athletic Director ($3,255)<br>Varsity Boys' Basketball<br>Golf |
| **2013-2014** | **Supplemental Compensation (Total):**<br>$14,646.10 (New Schedule effective<br>February 17, 2014; retroactive to<br>October 7, 2013)<br><br>**Positions:**<br>Assistant Athletic Director ($3,255)<br>Varsity Girls' Basketball<br>Softball<br>Jr. Varsity Girls' Basketball<br>Jr. High Volleyball | **Supplemental Compensation (Total):**<br>$9,166.70 (Old Schedule)<br><br><br><br>**Positions:**<br>Varsity Boys' Basketball ($9,166.70) |
| **2014-2015** | **Supplemental Compensation (Total):**<br>$19,255.00 (New Schedule)<br><br>**Positions**:<br>Athletic Director ($3,255)<br>Varsity Girls' Basketball ($8,000)<br>Jr. Varsity Girls' Basketball ($1,500)<br>Volleyball ($3,000) | **Supplemental Compensation (Total):**<br>$9,166.70 (Old Schedule)<br><br>**Positions:**<br>Varsity Boys' Basketball ($9,166.70) |

| | | |
|---|---|---|
| | Softball ($3,500) | |
| **2015-2016** | **Supplemental Compensation (Total):** $19,255.00 (New Schedule)<br><br>**Positions**:<br>Athletic Director ($3,255)<br>Varsity Girls' Basketball ($8,000)<br>Jr. Varsity Girls' Basketball ($1,500)<br>Volleyball ($3,000)<br>Softball ($3,500) | **Supplemental Compensation (Total):** $9,166.70 (Old Schedule)<br><br>**Positions**:<br>Varsity Boys' Basketball ($9,166.70) |
| **2016-2017** | **Supplemental Compensation (Total):** $16,000 (New Schedule)<br><br>**Positions**:<br>Varsity Girls' Basketball ($8,000)<br>Jr. Varsity Girls' Basketball ($1,500)<br>Volleyball ($3,000)<br>Softball ($3,500) | **Supplemental Compensation (Total):** $8,000 (New Schedule)<br><br>**Positions**:<br>Varsity Boys' Basketball ($8,000) |

(*See* doc. 28-4 at 23, 24; doc. 28-1 at 5, 9, 19, 21, 23, 25, 27, 30–31, 33–34, 36).

When Ms. Keith served as athletic director at Talladega High School, she did not have an assistant athletic director working alongside her, unlike Mr. Miller, who had Ms. Keith as assistant athletic director. Ms. Keith held the athletic director post until September 1, 2016, when the Board relieved her of those duties and replaced her with Mr. Terry Roller. Mr. Roller, like Ms. Keith, also did not have an assistant athletic director. The Board did not pay Mr. Roller for his work as athletic director. Although a Board member moved to pay Mr. Roller an annual supplement of $7,000 for that position, the Board ultimately decided—upon Mr. Roller's request—not to pay Mr. Roller any supplemental compensation for his work as athletic director. (Doc. 28-1 at 5; doc. 28-4 at 24; doc. 28-6 at 2).

Ms. Keith began questioning her supplemental compensation in 2013 after she became athletic director. In 2013, Ms. Keith spoke with her union representative, Charmaine Lewis, regarding her supplemental compensation. Ms. Lewis reached out to Talladega City Schools' superintendent and the Talladega High School bookkeeper, both of whom informed Ms. Lewis

that, according to their calculations, no problems existed regarding Ms. Keith's supplemental compensation. (Doc. 28-4 at 8).

And on November 28, 2016, a little more than two months after the Board terminated her as athletic director, Ms. Keith filed a charge of discrimination with the EEOC. In her charge, Ms. Keith alleged that the Board violated Title VII and the Equal Pay Act in setting her compensation. Ms. Keith did not allege retaliation in her EEOC charge. (Doc. 10-1 at 2).

Finally, on February 22, 2017, during the Alabama state high school basketball tournament, Ms. Keith posted a message on Facebook in which she encouraged the Sylacauga boys' basketball team to "go get that ring;" in other words, she encouraged them to win a state championship. According to the Board, for Sylacauga to win the state championship, Talladega would have to *not* win the state championship. Sylacauga and Talladega share a rivalry in basketball; so, according to Board member James M. Montgomery Jr., this social media post upset "[c]ommunity members, board members, coaches, and students," some of whom complained to the Board about the post. Ms. Keith maintains that she intended the post as nothing more than a show of good sportsmanship. In any event, the Board, on March 8, 2017, terminated Ms. Keith from her position as Talladega High School softball coach. (Doc. 28-2 at 2; doc. 28-4 at 36–37). Ms. Keith has not alleged or provided any evidence that she filed a second EEOC charge after the Board terminated her as softball coach.

Ms. Keith received a right-to-sue letter from the EEOC on May 22, 2018. (Doc. 10-1 at 4). Ms. Keith did not receive a right-to-sue letter from the United States Attorney General as required by federal statute. 42 U.S.C. § 2000e-5(f)(1); (Doc. 28-4 at 5). Ms. Keith then filed this lawsuit on August 16, 2018. She asserted claims for gender discrimination under Title IX and Title VII; A Title VII claim for hostile work environment; a Title VII claim for retaliation based

on her termination as athletic director and softball coach; a claim for "pay discrimination" based on her pay as basketball coach and athletic director, which she apparently brought under both Title VII and the Equal Pay Act; and a claim for quantum meruit. But she did not cite or otherwise refer to the Equal Pay Act in her complaint. (Doc. 1).

This court subsequently dismissed all but two counts of Ms. Keith's complaint. (*See* docs. 11–12). This court dismissed her Title IX claim on preemption grounds; her hostile work environment claim because she failed to allege facts stating such a claim; her retaliation claim because she failed to list retaliation in her EEOC charge; and her quantum meruit claim on sovereign immunity grounds. Accordingly, only Ms. Keith's Title VII gender discrimination claim and pay discrimination claim remain for the court's review at the summary judgment stage.

Both the Board and Ms. Keith have moved for summary judgment. Ms. Keith requests summary judgment on her Title VII claim because she worked as athletic director for the same pay as Mr. Miller—but did not have an assistant athletic director, unlike Mr. Miller—and because the Board "offered" Mr. Roller $7,000 in compensation to serve as athletic director. As to her Equal Pay Act claim, Ms. Keith moves for summary judgment because Mr. Miller received more to coach boys' basketball between 2013–2016 than she did to coach girls' basketball in the same time period. (Doc. 29). Ms. Keith also requests summary judgment under Title VII based on the Board's alleged discrimination in the supplement it paid her for coaching basketball. Ms. Keith finally requests summary judgment under the Equal Pay Act based on the compensation the Board paid her to work as athletic director.

The Board has also moved for summary judgment on several grounds. First, it urges this court to grant it summary judgment on Ms. Keith's Title VII claim because she never received a

right-to-sue letter from the U.S. Attorney General as required by 42 U.S.C. § 2000e-5(f)(1). It also alleges that some of Ms. Keith's compensation-based Title VII claims are time-barred. It argues that she cannot make out a *prima facie* case of Title VII pay discrimination as to either her athletic director or basketball pay claims. It argues that she cannot prove that the Board's proffered reasons for terminating her as softball coach were pretextual under Title VII. And finally, it opposes Ms. Keith's motion for summary judgment on her Equal Pay Act claim because, according to the Board, Ms. Keith never asserted a claim under the Equal Pay Act.

## II.     Summary Judgment Standard

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party to defeat the motion. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 254 (1986). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id*. at 255.

Furthermore, the court must view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both sides have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

The parties in this case have filed cross-motions for summary judgment. The filing of cross-motions for summary judgment does not affect the summary judgment standard. *See, e.g.*, *United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984). And the Eleventh Circuit has clarified that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Oakley*, 744 F.2d at 1555. Instead, "[t]he [c]ourt must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Ala. Mun. Ins. Co. v. Scottsdale Ins. Co.*, 297 F. Supp. 3d 1248, 1252 (11th Cir. 2017) (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 (N.D. Ga. 2014)). And finally, "[t]he fact that both parties simultaneously are arguing that there

is no genuine issue of fact…does not establish that a trial is unnecessary thereby empowering the court to enter judgment at it sees fit." *Citizens Bank & Tr. V. LPS Nat'l Flood, LLC*, 51 F. Supp. 3d 1157, 1168–69 (N.D. Ala. 2014) (quoting *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1289 (N.D. Ala. 2009)).

## III.    Analysis

The Board raises a variety of procedural grounds on which it asks the court to grant it summary judgment. First, it claims that this court should grant it summary judgment on Ms. Keith's Title VII claim because Ms. Keith did not receive a right-to-sue letter from the Attorney General. It claims that this court should deny Ms. Keith's motion for summary judgment on her Equal Pay Act claim because she did not include such a claim in her complaint. The Board additionally claims that some of Ms. Keith's pay-based Title VII claims are time-barred.

The Board also requests summary judgment on the merits of Ms. Keith's Title VII claims. It contends that Ms. Keith has not advanced a *prima facie* case of gender discrimination under Title VII on her athletic director or basketball coach pay claims. It alternatively argues that Ms. Keith cannot show that the Board's proffered nondiscriminatory reason for the basketball coaching pay discrepancy between Ms. Keith and Mr. Miller constitutes pretext for discrimination. It further alleges that Ms. Keith cannot show that the Board's failure to hire an assistant athletic director during her tenure as athletic director was pretext for discrimination. And it finally argues that Ms. Keith cannot show that the Board's decision to terminate her as softball coach was pretext for unlawful discrimination.

Ms. Keith also moves for summary judgment on her pay-based claims. She requests that this court enter judgment in her favor on those claims because the Board paid her less to coach girls' basketball than it paid Mr. Miller to coach boys' basketball; she also contends that the

Board's failure to provide her with an assistant athletic director or to offer her $7,000 in supplemental compensation to serve as athletic director constituted unlawful discrimination for which she is entitled to judgment as a matter of law.

The court will first address the Board's procedural arguments before advancing to the merits of the case. The court will consider the Board's and Ms. Keith's motions together where applicable.

### a.   Attorney General's Right-to-Sue Letter

The Board first argues that this court should enter judgment in its favor on Ms. Keith's Title VII claims because she brought them in this court without first receiving a right-to-sue letter from the Attorney General. But because the law of the Eleventh Circuit is unclear on this point, the court will examine Ms. Keith's suit on its merits even though she did not receive such a letter.

Federal law requires potential Title VII plaintiffs to "exhaust" their administrative remedies before filing a federal lawsuit under Title VII. *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–33 (1976)). One of these so-called "exhaustion" provisions requires potential Title VII plaintiffs to obtain a "right-to-sue letter," generally issued by the EEOC, before bringing a federal lawsuit. *See* 42 U.S.C. § 2000e-5(f)(1). But if the plaintiff wishes to sue a "government, governmental agency, or political subdivision" under Title VII, the plaintiff must first receive a right-to-sue letter not from the EEOC, but from the United States Attorney General. 42 U.S.C. § 2000e-5(f)(1); *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1524 (11th Cir. 1983); *Solomon v. Hardison*, 746 F.2d 699, 701–02 (11th Cir. 1984). But an EEOC regulation injects confusion into this requirement. Under 29 C.F.R. § 1601.28(d), "[i]n all cases where the respondent is a

government, government agency, or a political subdivision, *the Commission* will issue the notice of right to sue" where, as here, the EEOC dismisses the charge. (Emphasis added). (*See* doc. 10-1 at 4).

Ms. Keith does not dispute that the Board is a "government, governmental agency, or political subdivision" for the purposes of Title VII; so, the plain language of the statute required her to receive a right-to-sue letter not from the EEOC, but from the Attorney General. *See Enterprise City Bd. of Educ. v. Miller*, 348 So. 2d 782, 783 (Ala. 1977) (holding that city school Boards are "agencies of the state"). But the *EEOC*—as opposed to the Attorney General—issued her the only right-to-sue letter she received pursuant to the regulation directing it to issue right-to-sue letters to potential plaintiffs, such as Ms. Keith, looking to sue governmental entities. In any event, the Eleventh Circuit has held that the requirement that a Title VII plaintiff receive a right-to-sue letter from the Attorney General when suing a government agency is merely a condition precedent to suit, as opposed to a jurisdictional requirement. *Fouche*, 713 F.2d at 1526. Accordingly, in appropriate circumstances, courts may equitably modify or waive the requirement. *Solomon*, 746 F.2d at 701–02.

Courts in this circuit have usually invoked equitable waiver or modification as to the Attorney General's right-to-sue letter requirement in situations similar to Ms. Keith's: where a Title VII plaintiff, working under the understandable assumption that her receipt of a right-to-sue letter from the EEOC signaled the end of the administrative exhaustion process, merely filed suit without receiving a right-to-sue letter from the Attorney General. And in *Solomon*, the court waived the requirement where the plaintiff "attempted unsuccessfully to obtain a right-to-sue letter from the Attorney General." 746 F.2d at 702.

13

Although Ms. Keith does not provide any evidence that she unsuccessfully attempted to obtain a letter from the Attorney General, the court nevertheless finds equitable waiver of the requirement appropriate in this case because Ms. Keith's EEOC-issued right-to-sue letter said nothing about the requirement that she obtain such a letter from the Attorney General. (*See* doc. 10-1 at 4–5).

A decision from the Northern District of Georgia persuades the court on this point. In *Knott v. DeKalb County School System*, the court equitably waived the requirement where the plaintiff "received an EEOC-issued right-to-sue letter that did not indicate the necessity of a right-to-sue notice from the Attorney General." No. 1:11-cv-2683-SCJ, 2014 WL 10919525, at *13 (N.D. Ga. July 16, 2014) (quoting *Fouche*, 713 F.2d at 1525). *See also English v. Ware Cnty. Dep't of Family & Children Servs.*, 546 F. Supp. 689, 693 (S.D. Ga. 1982) (waiving the requirement under the same circumstances). Yet the Eleventh Circuit, in an unpublished opinion, has affirmed summary judgment for a defendant when a Title VII plaintiff—who sued a governmental agency—received a right-to-sue letter from the EEOC but not from the Attorney General. *Langston v. Lookout Mountain Cmty. Servs.*, 775 F. App'x 991, 996–97 (11th Cir. 2019). But unlike Ms. Keith, the plaintiff in *Langston* did not invoke the equitable waiver doctrine as set out by *Fouche* and *Solomon*. *Langston*, 775 F. App'x at 997. Accordingly, *Langston* does not apply to this case.

Instead, the court concludes that Ms. Keith has appropriately invoked the equitable waiver doctrine. Like in *Knott* and *English*, Ms. Keith's right-to-sue letter from the EEOC said nothing about the requirement that she also obtain a similar letter from the Attorney General. (*See* doc. 10-1 at 4–5). The court will equitably waive that requirement in this case, because its refusal to do so would "penalize [Ms. Keith] for merely following a course of conduct prescribed

by the federal agency charged with administering the Civil Rights Act." *Knott*, 2014 WL 10919525 at *13 (quoting *English*, 546 F. Supp. at 690–91). In any event, the court will grant the Board summary judgment on the merits of Ms. Keith's claims, as explained below, but it refuses to do so on these pedantic procedural grounds.

### b. *Equal Pay Act Claim*

Ms. Keith moves for summary judgment under the Equal Pay Act. (Doc. 29 at 15–25). She claims that the Board violated that law by paying her less to coach girls' varsity basketball than it paid Charles Miller to coach boys' varsity basketball. Ms. Keith also claims that the Board violated that Act while she was athletic director because it failed to either (a) hire an assistant athletic director during her tenure, as it did when Mr. Miller worked in the position; or (b) pay her the $7,000 in supplemental compensation it offered to Mr. Terry Roller to serve as athletic director, as opposed to the $3,255 Ms. Keith received. The Board did not move for summary judgment on Ms. Keith's Equal Pay Act claim because Ms. Keith did not cite or otherwise refer to the Equal Pay Act in her complaint. The Board defended the motion by maintaining that "[p]laintiff has never asserted an Equal Pay Act claim." (Doc. 31 at 10). So, the Board argues that this court should deny Ms. Keith's motion as to her Equal Pay Act claim because she has not properly brought one in this case.

The court concludes that as to her compensation for working as girls' varsity basketball coach, neither Ms. Keith's complaint nor the facts in the record support a claim for an Equal Pay Act violation, so it will deny her motion because she does not have such a claim properly before this court. And even if Ms. Keith did properly bring an Equal Pay Act claim as to her compensation for coaching basketball, the court will *sua sponte* enter summary judgment for the Board on that claim. The court concludes, however, that Ms. Keith properly asserted a claim

under the Equal Pay Act based on the compensation she received to work as athletic director. But because the record shows that that claim fails as a matter of law, the court will also *sua sponte* enter summary judgment for the Board on that claim.

The Eleventh Circuit has recognized district courts' power "to enter summary judgment *sua sponte* provided the losing party [here, Ms. Keith], was on notice that she had to come forward with all of her evidence." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). And courts will find that notice requirement satisfied where, as here, the losing party *herself* moved for summary judgment on the claim in question. By moving for summary judgment on her Equal Pay Act claim, Ms. Keith had "an adequate opportunity to demonstrate why summary judgment should not be granted" *against* her on that claim; accordingly, the court's entry of summary judgment for the Board *sua sponte* is "entirely appropriate." *See Burton*, 178 F.3d at 1204 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

In her complaint, Ms. Keith alleges "gender discrimination pursuant to…Title VII of the Civil Rights Act of 1964…and for discrimination based upon violation [*sic*] of Title IX." (Doc. 1 at 1). Although one of her counts alleges "pay discrimination," she does not cite the Equal Pay Act anywhere in her complaint. (*See* doc. 1 at 15). The Board asks the court to deny Ms. Keith's motion as to her Equal Pay Act claim because her complaint does not contain an Equal Pay Act claim. But courts must look to the *facts* alleged in the plaintiff's complaint—as opposed to the plaintiff's *legal theories*—to determine whether the plaintiff sufficiently stated a claim under a cause of action, even if a statute creates that cause of action. *E.g.*, *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997) ("The form of the complaint is not significant if it alleges

facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)). *See also Howard v. U.S. Steel Corp.*, No. 2:11-cv-01010-KOB, 2014 WL 1042968, at *23 (N.D. Ala. Mar. 14, 2014) (Bowdre, J.) (same). Accordingly, the court must determine whether Ms. Keith's complaint contains sufficient facts to state a claim for relief under the Equal Pay Act before it can determine whether to proceed to the merits of her summary judgment motion.

The Equal Pay Act requires employers to pay its male and female employees equal wages when they perform "equal work" for the employer. 29 U.S.C. § 206(d). To make out a *prima facie* case under the Equal Pay Act, the plaintiff must allege *facts* that show "that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1313 n.8 (11th Cir. 2018) (quoting *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003)) (internal quotation marks omitted).

To show that she performed equal work in a job that "require[s] equal skill, effort, and responsibility," and that she performed the job under "similar working conditions," the plaintiff must allege facts relating to *actual job content*, as "the controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content." *Blackman v. Fla. Dep't of Bus. & Prof'l Regulation*, 599 F. App'x 907, 910 (11th Cir. 2015) (quoting *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998)) (internal quotation marks omitted).

As to Ms. Keith's claim that the Board violated the Equal Pay Act by paying her less to coach girls' varsity basketball than it paid Mr. Miller to coach boys' varsity basketball, neither Ms. Keith's complaint nor the record in this case contain any facts relating to actual job content.

In fact, Ms. Keith's complaint does not even allege the *wages* the Board paid her and Mr. Miller for their respective coaching positions. (*See* doc. 1). Instead, Ms. Keith's complaint alleges that the Board engaged in "pay discrimination" by not paying her supplemental compensation to coach junior varsity volleyball and junior varsity softball and by paying her less for her work as athletic director than it did Mr. Miller. (Doc. 1 at 15). Because Ms. Keith did not defend the Board's motion for summary judgment as to the junior varsity volleyball and junior varsity softball claims, the court deems them abandoned. *See Adams v. Bank of Am, N.A.*, 237 F. Supp. 3d 1189, 1203 (N.D. Ala. 2017) ("[a] party that fails to defend a claim that is targeted by a summary judgment motion is deemed to have abandoned that claim") (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) and collecting cases).

Nor does the complaint or the record contain any facts as to the content of the boys' and girls' varsity basketball coaching positions. The totality of Ms. Keith's argument on this issue amounts to nothing more than the hollow statement that "[t]he only difference [between the two jobs] is that the plaintiff coached girls' varsity basketball and Mr. Miller coached boys' varsity basketball." (Doc. 29 at 12). But is that really the only difference? Did the boys' and girls' teams play the same number of games? Did they practice the same number of hours? Ms. Keith should have provided answers to questions such as these, for example, to show that her position required "equal effort" to Mr. Miller's. *See Ware*, 906 F.3d at 1313 n.8.

The only case Ms. Keith cites as to job similarity supports the court's conclusion. *See Hankinson v. Thomas Cnty. Sch. Sys.*, 257 F. App'x 199, 201 (11th Cir. 2007). In *Hankinson*, the court found a genuine issue of material fact as to job similarity between a male baseball coach and a female softball coach. But the female softball coach offered evidence comparing the number of players on each team, the number of games played by each team, the number and

qualifications of each team's assistant coaches, and the coaches' tertiary duties, such as field maintenance and generation of revenue. *Hankinson*, 257 F. App'x at 201. Ms. Keith provides no such evidence here.

In all, Ms. Keith supports her Equal Pay Act claim as to the basketball coaching position with only conclusory statements. Such statements do not state a claim for relief, not to mention entitle her to summary judgment on the putative claim. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *And see Glasscox v. City of Argo*, 903 F.3d 1207, 1212–13 (11th Cir. 2018) ("Conclusory allegations and speculation are insufficient to create a genuine issue of material fact. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment") (quoting *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)) (internal quotation marks omitted; emphasis in original). The court will deny Ms. Keith's motion as to her basketball-pay-based Equal Pay Act claim because she did not allege facts in her complaint sufficient to state a claim under the Equal Pay Act.

And even if Ms. Keith properly brought a claim under the Equal Pay Act based on her compensation as basketball coach, the court will *sua sponte* grant summary judgment to the Board on that claim for the reasons set forth above. Ms. Keith, for example, failed to provide any evidence whatsoever as to the content of the boys' and girls' basketball coaching positions. But federal law required Ms. Keith to provide evidence as to *actual job content* to make out a *prima facie* case under the Equal Pay Act as to her compensation for coaching girls' basketball. *See Blackman v. Fla. Dep't of Bus. & Prof'l Regulation*, 599 F. App'x 907, 910 (11th Cir. 2015) (quoting *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998)) (internal quotation marks omitted). So, even if Ms. Keith properly asserted a claim under the Equal Pay Act based on her

compensation for coaching girls' varsity basketball, the court will *sua sponte* grant the Board summary judgment on that claim.

The court concludes, however, that Ms. Keith properly asserted a claim under the Equal Pay Act based on the compensation she received for working as athletic director. In her complaint, Ms. Keith alleged that "[d]uring her tenure as the Athletic Director she was paid less than her predecessor Charles Miller." (Doc. 1 at 7). A female plaintiff makes out a *prima facie* case under the Equal Pay Act when she alleges that her employer paid her less than a man who occupied the same position and performed the same duties as the plaintiff. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1313–14 (11th Cir. 2018) (citing *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003)). So, Ms. Keith's *complaint* sufficiently alleged facts which, if proved, would state a *prima facie* case under the Equal Pay Act; accordingly, she has properly brought an Equal Pay Act claim based on her pay as athletic director.

But the evidence in the *record* shows that the Board paid Ms. Keith and Mr. Miller the same amount of supplemental compensation to work as athletic director: $3,255. Indeed, the Board paid its athletic director $3,255 under both the Old Schedule and the New Schedule. (Doc. 28-1 at 9, 33).  Considering this fact—which she does not dispute—Ms. Keith instead rests her claim on the fact that Mr. Miller worked with an assistant athletic director, but she did not; and that the Board offered her successor, Terry Roller, $7,000 in supplemental compensation to work as athletic director, while Ms. Keith received only $3,255 in supplemental compensation to work in the same position the year before.

But Ms. Keith received the *same wages* for her work as athletic director as did Mr. Miller; they both received $3,255 in supplemental compensation, as discussed above. Additionally, she received *more wages* for her work in that position than did Mr. Roller, because

the Board did not pay Mr. Roller any supplemental compensation to work as athletic director. And an Equal Pay Act claim must rest upon the fundamental showing that the employer *paid different wages* to employees of different sexes who performed equal work for the employer. 29 U.S.C. § 206(d)(1). Federal regulations define "wages" as "all *payments* made to [or on behalf of] an employee as remuneration for employment." 29 C.F.R. § 1620.10 (emphasis added). Ms. Keith essentially alleges what some courts have referred to as "workload discrimination;" but those courts have held that allegations and evidence of so-called workload discrimination do not support relief under the Equal Pay Act. *See Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 976 (5th Cir. 1983) (holding that unequal pay is a requirement of a *prima facie* case under the Equal Pay Act); *Grant v. Gen. Motors Corp.*, 908 F.2d 1303, 1311 (6th Cir. 1990) (same). *See also Williamson v. Digit. Risk, LLC*, No. 6:18-cv-767-Orl-31EJK, 2020 WL 434954, at *5 (M.D. Fla. Jan. 28, 2020) (holding that because "[p]laintiff has not argued, much less shown, that the male employees *were in fact* paid more than her," summary judgment was proper for defendant on Equal Pay Act claim) (emphasis in original).

Additionally, "wages" for the purposes of the Equal Pay Act do not include employment *opportunities* or *conditions*, such as the Board's "offer" of $7,000 in supplemental compensation to Mr. Roller to work as athletic director or Mr. Miller's employment conditions, which included working with an assistant athletic director.[1] *See Lancaster v. Holt, Rinehart & Winston, Inc.*, No. TCA 81-777, 1982 WL 539, at *2 (N.D. Fla. Oct. 20, 1982); *McNamee v. Fam. Focus, Inc.*, No. 2:14-cv-260, 2017 WL 3247453, at *5 (N.D. Ind. July 31, 2017) (finding no Equal Pay Act violation where men had the opportunity to work more hours than women, but worked for the same hourly rate); *True v. N.Y. State Dep't of Corr. Servs.*, 613 F. Supp. 27, 31 (W.D.N.Y. 1984)

---

[1] These allegations, however, may satisfy the *prima facie* case for a violation of Title VII, which the court will discuss below.

(no Equal Pay Act violation where men had the opportunity to work more overtime hours than women, but received the same overtime rate). Although Ms. Keith's complaint stated a claim for a violation of the Equal Pay Act as to her work as athletic director, the court will deny her summary judgment motion as to that claim. Instead, the court will again *sua sponte* grant the Board summary judgment on that claim because she cannot—and does not—allege that the Board paid her less in wages than a male holding the same position.

Because Ms. Keith does not present evidence of the content of the boys' and girls' basketball coaching positions, her complaint did not properly state a claim for relief under the Equal Pay Act, so the court will **DENY** her summary judgment motion as to that "claim." Even if she did properly bring a claim, the court will *sua sponte* **GRANT** summary judgment to the Board on the claim for the same reasons. And although the court concludes that Ms. Keith did properly bring a claim under the Equal Pay Act based on the compensation the Board paid her to work as athletic director, she has not presented any evidence proving that the Board paid her less than Mr. Miller or Mr. Roller to work as athletic director. Accordingly, the court will **DENY** Ms. Keith's motion for summary judgment as to her athletic director pay-based Equal Pay Act claim and will again *sua sponte* **GRANT** the Board summary judgment on that claim, because Ms. Keith failed to "designate 'specific facts showing that there is a genuine issue for trial.'" *See Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

### c. *Time-Bars (Title VII Pay Claims)*

The Board next alleges that Ms. Keith untimely brought some of her Title VII pay discrimination claims. The court agrees and finds that Ms. Keith cannot challenge the supplemental compensation she received under the Old Schedule between the 2009–2010 and

2012–2013 school years because she filed an EEOC charge challenging that compensation too late.

Because Alabama is a "non-deferral" state—in other words, because Alabama does not have a "state entit[y] authorized to grant or seek relief for victims of [workplace] discrimination"—potential Title VII plaintiffs in Alabama must file a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1214 n.2, 1220 (11th Cir. 2001) (citing *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1100 n.20 (11th Cir. 1996)). The Fair Pay Act further governs the timeliness of compensation-based Title VII claims. Under the FPA, which Congress passed to overturn the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*,

> an unlawful employment practice occurs…when a discriminatory compensation decision or other practice is adopted…or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages…or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). Under this so-called "paycheck accrual" rule, every paycheck a Title VII plaintiff receives under a particular discriminatory compensation scheme resets the statute of limitations as to that scheme. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 633 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, *codified at* 42 U.S.C. § 2000e-5(e)(3)(A).

But under the statute's plain language, only a paycheck affected by a *particular* compensation scheme constitutes actionable discrimination allowing a plaintiff to challenge *that particular scheme*. *See, e.g.*, *Hester v. N. Ala. Ctr. for Educ. Excellence*, 353 F. App'x 242, 243 (11th Cir. 2009) ("Because [plaintiff] has shown that [defendant] continued to pay her under the

*same compensation scheme* through the time she filed her EEOC charge, her claim is not untimely") (emphasis added).

When a plaintiff's position or title changes such that she is no longer subject to a particular compensation scheme, the statute of limitations as to that scheme resets for the last time when the plaintiff receives her final paycheck under that scheme. *See, e.g.*, *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 373 (5th Cir. 2013) ("Following [plaintiff's] July 2009 promotion, he was no longer affected by or subject to the allegedly discriminatory compensation decision…"); *Wilson v. Clayton*, 272 F. Supp. 3d 25, 32 (D.D.C. 2017) (finding certain pay claims time-barred after plaintiff's "position and title"—and, accordingly, her compensation scheme—changed while working for the same employer).

In this case, Ms. Keith voluntarily elected to change her coaching supplement payments from the Old Schedule to the New Schedule on February 17, 2014. Accordingly, she received her final paycheck under the Old Schedule sometime before February 26, 2014, when she received the sum of $1,536.28 to complete her conversion to the New Schedule. (Doc. 28-1 at 5). And as explained above, the Old Schedule and the New Schedule present entirely different compensation schemes: the Old Schedule set monthly supplemental pay amounts for some sports; contained set amounts for other sports; and then multiplied the monthly supplemental amount by the number of months the coach worked under her teaching contract. The New Schedule, on the other hand, merely established set amounts of supplemental pay by sport coached.

So, under the plain language of Title VII and the FPA, Ms. Keith had 180 days from the date she received her last paycheck under the Old Schedule to file an EEOC charge alleging pay discrimination under the Old Schedule. She filed her EEOC charge on November 28, 2016—

more than two years after she received a paycheck under the Old Schedule but while she was receiving paychecks under the New Schedule. Accordingly, any claim Ms. Keith brings vis-à-vis her compensation under the Old Schedule is time-barred; she may challenge only the New Schedule payments in this suit. Ms. Keith, for example, points out that she coached more sports than Mr. Miller but received less in supplement pay than Mr. Miller between the 2009–2010 and 2012–2013 school years. (Doc. 32 at 14). But Ms. Keith untimely brought any Title VII claim based on her supplemental pay for those years, so those claims are time-barred.

So, the court will therefore **GRANT** the Board's motion as to any putative Title VII pay discrimination claims Ms. Keith brings challenging the Old Schedule, under which the Board paid her until February 26, 2014.

### d.   *Athletic Director Pay and Working Conditions*

Both Ms. Keith and the Board move for summary judgment on Ms. Keith's Title VII gender discrimination claim challenging her pay and working conditions as athletic director. As discussed above regarding Ms. Keith's putative Equal Pay Act claim, Ms. Keith claims that the Board discriminated against her because of her sex by (i) not hiring an assistant athletic director to work alongside her when she was athletic director; and (ii) "offering" Terry Roller $7,000 to work as athletic director when she only received $3,255 for her work in that role. Both of Ms. Keith's claims fail.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has established differing frameworks under which a plaintiff may set forth a *prima facie* case under Title VII depending on the nature of the evidence of discrimination the plaintiff

proffers. Where, as here, the plaintiff relies on circumstantial evidence of discrimination, the court at the summary judgment stage must tread the well-worn trail blazed by the Supreme Court's decisions in *McDonnell-Douglas* and *Burdine*. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Under the *McDonnell-Douglas*/*Burdine* framework, the plaintiff bears the initial burden of showing "(1) that she belongs to a protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified to perform the job in question; and (4) that her employer treated 'similarly situated' employees outside of her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019).

Next, "if the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). And this required burden "is a low bar to hurdle," as "[t]he burden placed on the employer is only an evidentiary one: a burden of production that can involve no credibility assessment." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (internal quotation marks omitted). The Eleventh Circuit has repeatedly characterized the employer's burden of proffering a legitimate, nondiscriminatory reason for its employment actions as "exceedingly light: the [employer] must merely *proffer* non-gender based reasons, not *prove* them." *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992)) (internal quotation marks omitted).

Finally, after the defendant articulates a legitimate, non-discriminatory reason for its actions, to defeat summary judgment "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Lewis*, 918 F.3d at 1221 (quoting *Burdine*, 450 U.S. at 256) (internal quotation marks and alterations omitted).

As to Ms. Keith's claim that the Board discriminated against her by "offering" Terry Roller $7,000 in supplemental compensation to perform the role of athletic director, the court concludes that Ms. Keith has not advanced a *prima facie* case. The evidence shows that Mr. Roller did not receive any supplemental compensation to work as the athletic director. (Doc. 28-6 at 2; doc. 28-1 at 36). And the Board did not really "offer" the $7,000 in compensation to Mr. Roller. One Board member, while moving to approve the supplement schedule for that school year, stated that "the additional monies paid to [Mr. Roller] will not exceed $7,000 per year." (Doc. 28-6 at 2). But Mr. Roller made clear before the Board voted on the motion that he would not accept any additional compensation to serve as athletic director. The Board then voted to approve Mr. Roller as athletic director *without any supplemental pay*. As to Ms. Keith's challenge to the Board's $7,000 "offer" to Mr. Roller, then, she cannot show that the Board "treated [Mr. Roller]…more favorably" because it did not pay him any supplemental compensation to fill the role of athletic director and did not actually "offer" him $7,000 in supplemental compensation to fill that role—even assuming that an offer of compensation is actionable under Title VII. *Lewis*, 918 F.3d at 1220.

To Ms. Keith's claim that the Board discriminated against her by not hiring an assistant athletic director while she worked as athletic director, the Board does not dispute that Ms. Keith

27

has set out a *prima facie* case; instead, it argues that it made its decision for a legitimate, non-discriminatory reason—the elimination of the position—and that Ms. Keith cannot show that that reason was pretext for discrimination. The court agrees.

To sufficiently rebut as pretextual the defendant's non-discriminatory reason, the plaintiff must show *both* that the Board's "reason was false, *and* that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original). The plaintiff carries this burden by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)) (internal quotation marks omitted). And "provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and she cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d at 1265–66 (quoting *Chapman v. AI Transp., Inc.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Finally, when determining whether a Title VII defendant's legitimate, non-discriminatory reason constituted pretext for unlawful discrimination, courts must remember that they must not act as "super-personnel departments" by "second-guess[ing] the wisdom of an employer's business decisions." *Alvarez*, 610 F.3d at 1266 (quoting *Chapman*, 229 F.3d at 1030).

Here, the Board argues that it made a business judgment to eliminate the assistant athletic director position after Ms. Keith became athletic director because of "[b]oard demands and fiscal challenges" that "change from year to year." (Doc. 27 at 27). The court concludes that this

reason constitutes a legitimate, non-discriminatory one that would motivate a reasonable employer, especially considering that the Board must only *proffer* a legitimate, nondiscriminatory reason, not *prove* that reason. *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992)) (internal quotation marks omitted). Courts routinely hold that an employer's elimination of an employee's position or reduction of an employee's hours to save costs constitutes a legitimate, nondiscriminatory reason for the employment action. *See, e.g.*, *Amos v. Tyson Foods, Inc.*, 153 F. App'x 637, 645 (11th Cir. 2005) (cost-cutting was legitimate, nondiscriminatory reason for employer's reduction in plaintiff's overtime hours); *Woods v. Cent. Fellowship Christian Acad.*, No. 1:11-cv-3999-JEC-RGV, 2012 WL 12888678, at *7 (N.D. Ga. Oct. 1, 2012) (financial troubles constituted legitimate, nondiscriminatory reason for defendant's termination of plaintiff).

And Ms. Keith has not carried her burden of showing that the Board's reason was pretextual. She provides *no evidence* that the Board's decision was either false or was motivated by discrimination. She merely speculates that the Board discriminated against her: according to Ms. Keith, the Board "offered" Mr. Roller $7,000 in supplemental compensation to work as athletic director because, like Ms. Keith, the Board did not hire an assistant athletic director to work with him. In Ms. Keith's words, "[w]hen another male is placed in the [athletic director] position, he is offered additional pay for working without an assistant." (Doc. 32 at 17). But, as explained above, the Board did not "offer" Mr. Roller $7,000 to work as athletic director; instead, it did not pay him supplemental compensation for that work at all. Nor does she provide any concrete evidence that the vacancy in the assistant athletic director position motivated the Board's "offer" to Mr. Roller in any way. So Ms. Keith's assertion that the Board "offered" Mr.

Roller an additional $7,000 to work as athletic director because he, like Ms. Keith, would work without an assistant athletic director amounts to nothing more than speculation. But speculation of discrimination does not satisfy Ms. Keith's burden of showing pretext. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citing *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)).

In fact, the evidence supports the Board's argument that its decision to eliminate the assistant athletic director position was not pretext for discrimination. Ms. Keith admitted in her deposition that Talladega High School has never had an assistant athletic director other than herself. (Doc. 28-4 at 24). And the record shows that Mr. Roller and Mr. Ted Darby—both of whom served as athletic director after Ms. Keith—also worked without assistant athletic directors. (Doc. 28-1 at 36, 45). Ms. Keith would have a stronger argument as to pretext if, for example, the Board "eliminated" the assistant athletic director position only during the years Ms. Keith served as athletic director and then reinstated the position when Mr. Roller and Mr. Darby filled the role. But the Board kept the position vacant even after the Board replaced Ms. Keith as athletic director with Mr. Roller and Mr. Darby. So, a reasonable factfinder could not find that the Board's decision to eliminate assistant athletic director position was pretext for unlawful discrimination against Ms. Keith.

Because Ms. Keith cannot make out a *prima facie* case of discrimination as to the Board's "offer" of $7,000 to Mr. Roller, and because she cannot show that the Board's decision to eliminate the assistant athletic director position was pretextual, the court will **DENY** Ms. Keith's motion for summary judgment and will **GRANT** the Board's motion as to Ms. Keith's Title VII claims based on her work as athletic director.

### e.   *Basketball Coach Pay*

Both Ms. Keith and the Board have moved for summary judgment as to Ms. Keith's Title VII claim challenging her supplemental compensation for coaching basketball. Because Ms. Keith improperly proffered Mr. Miller as a comparator, the court finds that Ms. Keith has not made out a *prima facie* case.

As explained above, under the Eleventh Circuit's interpretation of the *McDonnell Douglas*/*Burdine* framework, a Title VII plaintiff claiming intentional discrimination with circumstantial evidence must show that "her employer treated 'similarly situated' employees outside of her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019). And the Eleventh Circuit in *Lewis* interpreted the Supreme Court's "similarly situated" language to require a Title VII plaintiff to proffer a "comparator" that is "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224.

According to the court in *Lewis*, a comparator is similarly situated to the plaintiff "in all material respects" when the comparator and the plaintiff, among other things, are "subject to the same employment policy, guideline, or rule." *Lewis*, 918 F.3d at 1227 (citing *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999)). And a court's comparison of the plaintiff and her comparator "will not turn on formal labels, but rather on substantive likeness…a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they '*cannot reasonably be distinguished.*'" *Lewis*, 918 F.3d at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1355 (2015)) (emphasis added).

In this case, the Board acknowledges it paid Mr. Miller $9,166.70 to coach boys' basketball but paid Ms. Keith $8,000 to coach girls' basketball during the 2013–2014 through the 2015–2016 school years. But, the Board argues, Ms. Keith and Mr. Miller were not "similarly

situated in all material respects" during those school years because Mr. Miller received his coaching supplement from the Old Schedule and Ms. Keith received her coaching supplement from the New Schedule. The court agrees.

As explained above, *Lewis* requires the plaintiff to show that her employer subjected both her and her comparator to the same "employment polic[ies], guideline[s], and rule[s]." *Lewis*, 918 F.3d at 1227. But because Mr. Miller and Ms. Keith chose to receive their supplemental coaching compensation from different compensation schemes, the Board did not subject Mr. Miller and Ms. Keith to the same "employment policy" as to supplemental compensation during the years in question. *Lewis*, 918 F.3d at 1227. The Board determined Mr. Miller's supplemental compensation under the Old Schedule by multiplying a set supplement amount by the number of months in his teaching contract. And during the school years in question, Mr. Miller's teaching contract had a 12-month duration—as opposed to the Board's standard 9-month contract—because he worked as Talladega High School's assistant principal. Mr. Miller also received an extra month of teaching pay for coaching basketball under the Old Schedule.

Ms. Keith, on the other hand, elected to change from the Old Schedule to the New Schedule, under which she received a set annual amount of supplemental compensation determined by the sports she coached. Because the Board calculated Ms. Keith's supplemental compensation in a different manner than it did Mr. Miller's, Ms. Keith and Mr. Miller were not "similarly situated in all material respects" during the years in question. And even if Ms. Keith had received her supplemental compensation for coaching basketball under the Old Schedule, she still would not have been "similarly situated in all material respects" to Mr. Miller because Mr. Miller had a 12-month contract to work as a principal, while Ms. Keith had a 10-month teaching contract. And as explained above, under the Old Schedule, the Board determined the

amount of a coach's supplement based on the length of the coach's *teaching* schedule. (*See* doc. 28-5 at 1, 6).

Persuasive authority from the Eleventh Circuit supports this conclusion. *See Earle v. Birmingham Bd. of Educ.*, --- F. App'x ----, ----, 2021 WL 162330, at *3 (11th Cir. Jan. 19, 2021). In *Earle*, the plaintiffs in a wage-based Title VII case attempted to proffer as a comparator an employee who received more pay for working in the same position as the plaintiffs. But the putative comparator received his pay under a workplace policy that allowed him to stay grandfathered in to a former payment policy under which he received higher pay; so the court concluded that the putative comparator was not "similarly situated in all material respects" with the plaintiffs, whom the defendant compensated under a lower-paying compensation policy. *Earle*, --- F. App'x at ----, 2021 WL 162330 at *3.

Similarly here, Ms. Keith and Mr. Miller chose to receive their supplemental coaching compensation under different payment policies based on an elective grandfathering system. And because of the stark difference in the way the Board paid supplemental coaching compensation to Mr. Miller and Ms. Keith, the court concludes that a reasonable factfinder could "reasonably distinguish" Ms. Keith and Mr. Miller's situations. *Lewis*, 918 F.3d at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1355 (2015)). Ms. Keith testified that she elected to receive her supplemental compensation under the New Schedule in 2014 after she calculated that she would receive $4,000 more in supplemental compensation under the New Schedule *for the same work* than she did under the Old Schedule. (Doc. 28-1 at 4–6; doc. 28-4 at 15). Consequently, Ms. Keith improperly proffered Mr. Miller as a comparator for the purposes of her pay-based Title VII claims.

And assuming for the sake of argument that Mr. Miller was a proper comparator during the years in question, the court alternatively concludes that the difference between the supplement schedules under which the Board paid Ms. Keith and Mr. Miller constitutes a legitimate, non-discriminatory reason for the pay disparity that Ms. Keith has not shown to be pretextual. Ms. Keith alleges that she "was deceived" about the difference between the Old Schedule and the New Schedule; so she concludes that the Board intentionally discriminated against her. (Doc. 32 at 7, 14).

But the record does not support this assertion. Ms. Keith testified at her deposition that a former Talladega High School principal first suggested to her that the Board underpaid her for her basketball coaching duties. (Doc. 32 at 10). Armed with this information, Ms. Keith contacted her union representative, Ms. Charmaine Lewis, who then contacted Talladega City Schools' superintendent and Talladega High School's bookkeeper, both of whom concluded that the Board paid Ms. Keith correctly. (Doc. 28-4 at 8). Ms. Keith also claims that the Board "discriminated against [her] under both pay scales" because the Board paid her less in supplemental compensation under the Old Schedule than Mr. Miller between the 2009–2010 and 2012–2013 school years, even though she coached more sports than Mr. Miller did during those school years. (Doc. 32 at 14).

Other than this testimony, Ms. Keith advances no evidence of intentional discrimination or deception on the Board's part as to her coaching pay. Ms. Keith does not explain *how* the Board calculated Mr. Miller's pay under the Old Schedule, for example. She does not provide evidence of how much the Board paid each of them *per sport*, either. But to show pretext, Ms. Keith must "meet each proffered reason head on and rebut it[;] she cannot succeed by simply quarreling with the wisdom of that reason." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295,

1313–14 (11th Cir. 2016) (quoting *Chapman v. AI Transp., Inc.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Instead, like many of her other arguments in this case, Ms. Keith merely speculates that the Board intentionally discriminated against her by paying her less to coach girls' basketball than it paid Mr. Miller to coach boys' basketball. She has adduced no evidence suggesting either that the Board's "reason was false" or that "discrimination was the real reason." *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). But such speculation will not defeat the Board's motion, because "conclusory allegations of discrimination, without more are not sufficient to raise an inference of pretext." *See Furcron*, 843 F.3d at 1313 (quoting *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)).

For these reasons, the court will **DENY** Ms. Keith's motion for summary judgment on her Title VII claim challenging her coaching compensation and will **GRANT** the Board's motion on that same claim.

### f.     *Termination as Softball Coach*

Finally, Ms. Keith argues that the Board violated Title VII when it terminated her as Talladega High School's softball coach. The Board retorts that Ms. Keith has improperly attempted to cast her softball termination claim as a retaliation claim, a claim that the court dismissed earlier in this case. The Board further argues that Ms. Keith cannot show that its proffered legitimate, non-discriminatory reason for terminating her—a post she made on Facebook in support of one of Talladega High School's rivals—constituted pretext for unlawful discrimination. The court again agrees with the Board and additionally finds that even if Ms. Keith properly alleged a retaliation claim, she has not made out a *prima facie* case of retaliation under Title VII.

Ms. Keith first argues that the Board retaliated against her by firing her as varsity softball coach after she filed her EEOC charge. (Doc. 32 at 18). In her complaint, Ms. Keith alleged that the Board retaliated against her in violation of Title VII by terminating her as athletic director and as softball coach. But the court previously dismissed Ms. Keith's retaliation claim because she did not raise it in her EEOC charge. (Doc. 11 at 9–12).

In its review of the record, the court has discovered that although the Board terminated Ms. Keith as athletic director before she filed her November 28, 2016 EEOC charge, it terminated her as softball coach on March 8, 2017, more than three months after she filed her EEOC charge. Consequently, Ms. Keith could not have included a claim of retaliation in her EEOC charge as to her termination as softball coach, because the Board terminated her from that position *after* she filed the EEOC charge. But Ms. Keith did not allege the *date* the Board terminated her as softball coach in her complaint. Ms. Keith alleged in her complaint only that the Board terminated her as softball coach "one hour before the first game was to occur." (Doc. 1 at 13). Accordingly, the court properly dismissed Ms. Keith's retaliation claim for failure to raise it in her EEOC charge, because Ms. Keith did not allege that the Board fired her from that position *after* she filed her EEOC charge. (Doc. 11 at 9–12). Ms. Keith has not alleged that she filed a subsequent EEOC complaint alleging retaliation based on her termination as softball coach, nor does the record contain any such subsequent EEOC charge.

And the court dismissed Ms. Keith's retaliation claim *without prejudice*, so Ms. Keith had an opportunity to seek leave to amend her complaint to correct her pleading defects and to allege that she filed a subsequent EEOC charge alleging retaliation, if she did in fact do so. (*See* doc. 11 at 14) (dismissing Count Four (retaliation) without prejudice). Indeed, Ms. Keith had *ample* opportunity to amend her complaint: the court's scheduling order gave her until

September 27, 2019 to do so, more than five months after it dismissed her retaliation claim without prejudice. (Doc. 17 at 2). By not moving to amend her complaint to correct these pleading deficiencies, Ms. Keith has abandoned her retaliation claim. *See Skyles v. McCoy*, 730 F. App'x 769, 771 (11th Cir. 2018) (finding that plaintiff abandoned certain claims by not amending complaint within amendment deadline) (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002)).

And even if Ms. Keith properly brought a claim for Title VII retaliation based on the Board's termination of her as varsity softball coach, that claim fails as a matter of law. Even though this court previously dismissed Ms. Keith's retaliation claim for failing to raise it in her EEOC charge, the Board defended against Ms. Keith's Title VII claim based on its termination of her as softball coach in its motion for summary judgment even though it had not yet terminated Ms. Keith as softball coach at the time she filed her EEOC charge. (Doc. 11 at 9–12; doc. 27 at 29–30). Out of an abundance of caution, then, the court will consider Ms. Keith's Title VII retaliation claim arising from the Board's termination of her as softball coach.

Ms. Keith alleges that the Board terminated her as varsity softball coach on March 8, 2017 because of her "report of the disparate pay matter to [the] EEOC and based upon her continued demand for equal pay." (Doc. 27 at 10; doc. 32 at 18). Ms. Keith filed her EEOC charge on November 28, 2016. (Doc. 1 at 7). As to her "continued demand for equal pay," Ms. Keith has established only that she "began questioning" her supplemental pay in 2013 when she met with her union representative. (Doc. 28-4 at 8). She provides no other evidence supporting her alleged "demands" for equal pay; she does not, for example, allege that she met with anyone regarding her pay other than with Ms. Lewis in 2013. The court concludes that Ms. Keith cannot make out a *prima facie* case of Title VII retaliation based on this evidence.

To make out a *prima facie* case of retaliation under Title VII, the plaintiff must show "that (1) [she] engaged in statutorily protected expression; (2) [she] suffered an adverse employment action; and (3) … some causal relation [exists] between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). To satisfy the causation prong of the *prima facie* case, the plaintiff must "prove only that retaliatory animus was one factor in the adverse employment decision." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (citing *Terry v. Ashcroft*, 336 F.3d 128, 140–41 (2d Cir. 2003)).

In certain circumstances, a plaintiff can meet her burden of showing that her engagement in protected activity caused her employer's adverse employment action "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000)). But, as the Eleventh Circuit has admonished, "mere temporal proximity, *without more*, must be 'very close.'" *Thomas*, 506 F.3d at 1364 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (emphasis added). The Eleventh Circuit has held, for example, that "[e]ven a three-month interval between the protected expression and the employment action…is too long." *Brown*, 597 F.3d at 1182 (citing *Thomas*, 506 F.3d at 1364). And "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, *the complaint of retaliation fails as a matter of law*." *Brown*, 597 F.3d at 1182 (quoting *Thomas*, 506 F.3d at 1364) (emphasis added).

Ms. Keith's retaliation claim fails because she cannot show that the Board terminated her as softball coach because her EEOC charge. So, Ms. Keith cannot make out a *prima facie* case of

Title VII retaliation.  Ms. Keith filed her that charge on November 28, 2016. Filing an EEOC

charge constitutes "protected activity" under Title VII. *Smith v. City of Fort Pierce, Fla.*, 565 F.

App'x 774, 777 (11th Cir. 2014). And the Board took an adverse employment action against her

by terminating her as softball coach on March 8, 2017. But because more than three months

passed between that protected activity and her termination as softball coach, the temporal

proximity between the protected activity and the adverse employment action does not establish

causation in and of itself. *Brown*, 597 F.3d at 1182.

Because Ms. Keith cannot satisfy the causation prong of the *prima facie* case based on

the temporal proximity of her protected activity to the Board's adverse employment action, she

must proffer additional evidence of causation to support her *prima facie* case. But she has not

done that here. In fact, Ms. Keith provides no evidence of causation whatsoever: as explained

above, she merely questions the wisdom of the Board's decision to terminate her as softball

coach because of the Facebook post. That Ms. Keith may have intended the Facebook post as a

show of good sportsmanship and that she encouraged both the Sylacauga and Talladega teams on

Facebook has no bearing on whether the *Board* made the decision to terminate Ms. Keith as

softball coach with retaliatory animus. Based on the evidence Ms. Keith has provided at the

summary judgment stage, a reasonable jury could only reach one conclusion: that "[Ms. Keith's]

protected activity and the [Board's] negative employment action [were] completely unrelated."

*Pennington*, 261 F.3d at 1266 (quoting *Olmsted*, 141 F.3d at 1460)). Ms. Keith's retaliation

claim fails because she cannot make out a *prima facie* case of retaliation.

As to Ms. Keith's claim for discrimination under Title VII, the Board seems to

acknowledge that Ms. Keith properly brought a claim for Title VII gender discrimination—as

opposed to retaliation—based on her termination as softball coach because it argues that the

Board's proffered non-discriminatory reason for terminating her was not pretextual. The Board raises this argument even though it had not yet terminated Ms. Keith at the time she filed her EEOC charge and even though Ms. Keith does not allege that she filed a subsequent EEOC charge based on her termination as softball coach.

The Board terminated Ms. Keith as softball coach on March 8, 2017. It alleges that it terminated her from that position because of a post Ms. Keith made on Facebook on February 22, 2017. In the Facebook post in question, Ms. Keith urged Sylacauga, one of Talladega's rivals, to "go get that ring" in the state basketball tournament. According to the Board, for Sylacauga to "get that ring" (in other words, to win the state championship), Talladega would have to lose. (Doc. 28-2 at 2). The Board claims that the post upset "community members, Board members, coaches and students." (Doc. 28-2 at 2). The Board then terminated Ms. Keith as softball coach on March 8, 2017, because of the post.

The court determines that the Board's stated reason for terminating Ms. Keith as softball coach constitutes a legitimate, non-discriminatory reason for the purposes of Title VII. A social media post by a teacher encouraging a rival school's sports team that upset and led to complaints from students at the teacher's school, other coaches, and community members could motivate a reasonable employer to terminate the teacher who made the post from a coaching position. *See Alvarez*, 610 F.3d at 1265–66 (quoting *Chapman*, 229 F.3d at 1030). *See also, e.g.*, *Woodward v. Jim Hudson Luxury Cars, Inc.*, No. CV 118-032, 2019 WL 4793058, at *12 (S.D. Ga. Sept. 30, 2019) ("an employee's social media content may serve as a legitimate, nondiscriminatory reason for taking adverse employment action") (citing *Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1282 (M.D. Ala. 2016)); *Bush v. Gulf Coast Elec. Coop., Inc.*, No. 5:13-cv-369-MW-GRJ, 2015 WL 3862728, at *10 (N.D. Fla. June 11, 2015) (plaintiff's negative post about company on

social media constituted legitimate, nondiscriminatory reason for adverse employment action

defendant took against plaintiff); *McCreless v. Decatur City Bd. of Educ.*, No. CV-09-S-337-NE,

2010 WL 11565309, at *10 (N.D. Ala. Aug. 18, 2010) (parent complaints, *inter alia*, constituted

legitimate, nondiscriminatory reason for not renewing teacher's contract); *Rolle v. Worth Cnty.*

*Sch. Dist.*, 128 F. App'x 731, 733 (11th Cir. 2005) (district court properly found that complaints

from teachers and parents about teacher constituted legitimate, nondiscriminatory reason for

board's decision no to rehire teacher); *Siudock v. Volusia Cnty. Sch. Bd.*, 568 F. App'x 659, 664

(11th Cir. 2014) (same).

But Ms. Keith—as she must to keep her claim alive—alleges that the Board's stated

reason for her termination masquerades as pretext for discrimination. According to Ms. Keith,

she congratulated both the Talladega and Sylacauga basketball teams on Facebook. And Ms.

Keith claims that she only intended to show good sportsmanship in making the post. (Doc. 32 at

22).

The court concludes that a reasonable factfinder could not conclude that the Board hid

illegal discrimination behind its stated reason for firing Ms. Keith as softball coach. First, and

most importantly, Ms. Keith's arguments—that she congratulated both the Talladega and

Sylacauga basketball teams, and that she intended the post only as a show of sportsmanship—

*again* constitute nothing more than speculation that the Board discriminated against her. She

does not address the fact, for example, that community members and students expressed concern

about and disappointment with the congratulatory post to Sylacauga, regardless of whether she

also congratulated Talladega. And as discussed above, such speculation does not support a

finding of pretext. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265–66 (11th Cir. 2010)

(quoting *Chapman v. AI Transp., Inc.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Instead, to carry

her burden of showing pretext, Ms. Keith must show *both* that the Board's "reason was false, *and* that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original). Ms. Keith has not done that here; she has supported her pretext argument with nothing more than "[her] own unsupported belief" of discrimination. *Siudock*, 568 F. App'x at 664. Such evidence fails as a matter of law to support a showing of pretext.

The court will note here that although Ms. Keith has not raised her First Amendment free speech rights in this suit, the Board's proffered legitimate, nondiscriminatory reason for terminating her as softball coach—complaints arising from a post Ms. Keith made on Facebook—still constitutes a "legitimate, nondiscriminatory reason" for purposes of the *McDonnell-Douglas / Burdine* framework, regardless of whether the Board's actions violated Ms. Keith's First Amendment rights. *See, e.g.*, *Jackson v. James*, 952 F. Supp. 737, 742 (M.D. Ala. 1996) ("[w]hile defendants' proffered reason has resulted in [a ruling for plaintiffs] on plaintiffs' First Amendment claim, *it is nevertheless a 'non-discriminatory reason' for purposes of the plaintiffs' race claim*, and satisfies their burden of production") (emphasis added).

Additionally, Ms. Keith's argument that she intended the post merely as a show of good sportsmanship misunderstands the proper point of the pretext inquiry. The pretext analysis must focus on the *employer*'s beliefs, not the *employee's intent*. *Alvarez*, 610 F.3d at 1266. And none of the evidence Ms. Keith has proffered shows a discriminatory intent on the part of the Board vis-à-vis her termination as softball coach. Instead, the evidence shows that the Board fired her because of a post she made on Facebook that *she* intended only as a show of good sportsmanship. Without any evidence that the *Board* intended to discriminate against Ms. Keith

because of her sex by firing her as softball coach, a reasonable factfinder could not conclude that the Board's termination decision was pretext for discrimination; accordingly, her claim fails as a matter of law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 254 (1986).

For these reasons, the court will **GRANT** the Board's summary judgment motion as to Ms. Keith's Title VII claim challenging her termination as softball coach.

### IV.     Conclusion

As in most employment discrimination cases, neither party in this case has conclusively explained the Board's actions. But as the plaintiff, the burden falls on Ms. Keith to satisfy the *McDonnell-Douglas/Burdine* framework by proffering evidence from which a reasonable factfinder could conclude that the Board acted with *discriminatory* animus towards her in taking the challenged actions.

Because she has not put forth such evidence, the court will **DENY** Ms. Keith's motion (doc. 29) and will **GRANT** the Board's motion in its entirety (doc. 26). The court will enter such an order contemporaneously with this opinion.

**DONE** and **ORDERED** this 10th day of March, 2021.

_Karon O. Bowdre_
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE